BERRY, (THOMPSON v.) See Case No. 13,943.

BERRY, (WILSON v.) See Case No. 17,791.

---

## Case No. 1,360.

### In re BERRYMAN et al.

[2 Hask. 293.] [1]

District Court, D. Maine. Dec. Term, 1878.

PARTNERSHIP — LIABILITY OF MARRIED WOMEN— AGENCY OF HUSBAND — LIABILITY AFTER EXPIRATION OF PARTNERSHIP TERM—BANKRUPTCY.

1. A married woman, who authorizes her husband to sign her name to articles of copartnership between herself and others, is bound thereby.

2. When such articles limit the copartnership to one year, meantime giving the husband authority to act for his wife, a continuance of the business thereafter by the husband, in the name of his wife, with one of the copartners, as a new firm. without the knowledge or authority of the wife, will not make [her] a copartner in the new firm.

3. A person not actually a copartner cannot be adjudged bankrupt upon petition of a pretended copartner.

In bankruptcy. [In the matter of John Berryman & Co.] Petition of [John Berryman] one member of a collapsed firm, that the firm and copartners be adjudged bankrupt. The other alleged copartner [Sarah A. Hall] appeared, and by answer denied the copartnership; the cause was heard upon petition, answer, and proof. [Petition dismissed, as to Sarah A. Hall.]

Josiah H. Drummond, for petitioner.

Charles E. Clifford and William H. Clifford, for respondents.

FOX, District Judge. John Berryman, of Buxton, in this district, has filed his petition praying that he and the firm of John Berryman & Co. may be adjudged bankrupt. The petitioner alleges that said firm is composed of himself and Sarah A. Hall, wife of John W. Hall, of Boston. Notice was given of the petition to Sarah A. Hall, and she has appeared and filed a written denial of the copartnership; and the question now presented for decision is, whether she was a member of the firm of John Berryman & Co., and liable to be adjudged a bankrupt on that account.

It appears from all the evidence in the case that John W. Hall, prior to 1872, purchased a woolen mill at West Buxton, and took a deed in the name of his wife, Sarah

---

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

A. Hall, as he was then in bankruptcy, and had not obtained his discharge.

In 1872, Mr. Hall, being desirous that the mill should be occupied, entered into an arrangement with Berryman and one T. O. Boody to form a copartnership in the woolen business. On account of Hall's insolvency, and the title to the mill being in Mrs. Hall, the articles were drawn, creating a partnership between Mrs. Hall and Berryman and Boody, and were taken to Boston for execution by Mrs. Hall. She declined to sign them, and they were signed by her husband with her name, and sent to Berryman. The authority of the husband thus to execute this instrument in her behalf is now denied by both Mr. and Mrs. Hall; but, from his affidavit given in a previous stage of the cause, I am of opinion that she did verbally assent to her husband so doing, and that her name, in her presence, and with her knowledge, was by him subscribed to the articles, so that she is fully bound thereby, to the same extent as if executed by her personally. This being, therefore, her contract, we must from its terms ascertain the extent and duration of her liability thereby incurred.

It creates a copartnership between Mrs. Hall, Berryman, and Boody, for the manufacture of goods, under the style of John Berryman & Co., to continue one year from May 25, 1872, unless sooner terminated by mutual consent, or death of either party. It provides for a capital of $2,000, of which Mrs. Hall and Berryman were each to furnish one-half, the goods manufactured to be their joint property, they receiving interest at rate of 7 3-10 on capital. Mrs. Hall "was not to render any personal services for the company, but was to be represented in the transaction of the business of said copartnership by John W. Hall as her agent; and, acting in all respects as her agent and attorney relating to said company and copartnership business, and in behalf of said Sarah A. Hall, and in her stead, he was to act as the agent and attorney of the copartship in making purchases and disposing of the products of the mill, and to be the financial agent and treasurer of the copartnership." Mrs. Hall was to be accountable for the faithful discharge of his duties by J. W. Hall; the mill was occupied by the company; Berryman, Boody, and J. W. Hall were each to receive $1.75 per day for their personal services, and, after payment of expenses and interest, Mrs. Hall was to receive for the use of the mill, &c., 57½ per cent. of the balance; Berryman, 22½ per cent.; and Boody 20 per cent.

The business was carried on under this agreement until Dec. 8, 1873, when Boody withdrew, transferring to Mrs. Hall and Berryman all his interest in the copartnership effects, and receiving therefor an obligation of indemnity against all partnership liabilities, signed by Berryman, and which purported to be signed by Mrs. Hall, and was witnessed by her husband, it being a sealed instrument.

It appears, that J. W. Hall furnished to the copartnership the $1,000 of capital which by the articles were to be furnished by Mrs. Hall; she personally had nothing whatever to do with the business of John Berryman & Co. after May 25, 1872; received nothing for the rent of the mill, or from the business in any way whatever; but, all that was done in her behalf was done by her husband, without any other authority to act for her, than was conferred upon him by the articles of copartnership.

There is no evidence that Mrs. Hall authorized her husband to execute in her behalf the bond of indemnity to Boody, or that she was informed or assented to his withdrawal from the firm. The only act of Mrs. Hall relative to the copartnership or its affairs, in any way, was her authorizing her husband to sign her name to the articles of May 25th; and after that, it does not appear that she took any part in the matter, but has been an entire stranger to all that has been done by her husband in her name.

The copartnership was limited to one year, and during that time, by the very terms of the articles, J. W. Hall was her agent, "with full authority to represent her in the transaction of the business of said copartnership, and to act as her agent and attorney in all matters relating thereto." This authority, which was conferred upon him, was limited in its duration, and terminated with the expiration of the year; and, as between the copartners, their relations as copartners then ceased, unless the partnership was continued by some agreement between them, express or implied.

If John W. Hall had been a member of the firm, instead of his wife, his conduct, after the expiration of the year, would have required the court to find that the copartnership was still existing and remained as before; but, after the expiration of the year, John W. Hall had not, by the terms of the articles of copartnership, any authority in his wife's behalf to further continue and extend this relation. His authority as her agent was restricted to the period of the original agreement; and beyond that time he was wholly without authority to represent her in forming any new contract for the continuance of the firm; and the other members, having knowledge of this limitation of his authority, are bound thereby, and cannot rightfully insist on any further power or authority in his wife's behalf than the instrument conferred upon him.

It may be said that the business was continued as before, after the year expired, until the eighth of December, 1873; and it is very true that J. W. Hall, by his actions, did all that he could do to thus prolong the existence of the firm; but, it nowhere appears that, while thus acting, he had the least authority

to bind his wife as her agent; nor can I find any evidence to charge her with knowledge of her husband's proceedings in the business. The goods were manufactured in Maine. She then resided in Massachusetts; and there is no testimony that she was in any way cognizant that the business was continued after May 25, 1873, as it had been previously conducted.

Conceding that the partnership continued beyond the year, the business being carried on as before. without change of any kind, still, it is clear that by the withdrawal of Boody from the firm on the eighth day of December, 1873, the firm of J. Berryman & Co., as it had previously existed, was at an end. Boody had then a right to withdraw at any time, as the year had expired; and by so doing, with or without the assent of his associates, the partnership was dissolved, and the other partners were no longer copartners, but tenants in common merely; and some further agreement between them would be requisite to create the relation of copartnership.

In the present case, there is an entire absence of testimony to establish the assent of Mrs. Hall to the creation of a new copartnership between herself and Berryman, under the style of J. W. Berryman & Co.; and, upon the clearest principles of law, she can not in any way be considered as having entered into such a copartnership.

It can not be pretended that a single word can be found in the articles of May twenty-third, conferring on J. W. Hall authority to constitute her a member of any new firm, or to continue the old firm beyond the year. She had agreed to become a member of the firm as composed of the three persons named in the articles; but, nowhere does she assent to be bound by her attorney's attempt to create a new partnership between herself and one member alone of the old firm.

It is argued that the old firm still continued after December 8, 1873, because no notice was given of the dissolution; but, this is not an accurate statement of the condition of the parties. The firm was in fact dissolved by the withdrawal of Boody; but, notwithstanding such was the consequence of his withdrawal, the law of partnership provides that, as to those who have dealt with a firm knowing its members, the copartnership, after it is dissolved, shall be deemed to continue until knowledge of the change is in some way brought home to such parties. It is merely an application of the doctrine of estoppel as to one class of creditors, who have, in ignorance of any change, continued their dealings on the faith of all continuing as copartners who were so originally; but, quoad the individual members of the firm and the world at large, the firm is no longer in existence when one member has withdrawn, and the firm is thereby dissolved; and, as such member can no longer be held chargeable with debts contracted after such

dissolution by one or more of the members of the firm continuing to carry on the business under the firm name, he is not liable to be adjudged bankrupt as a member of the firm. if those continuing the business become bankrupt. It may be that, by his neglect to notify the old creditors, a special liability has been incurred by him to those who may have continued their dealings in ignorance of any change; but such a liability is not a ground for proceedings in bankruptcy against such a party, as a general copartner in the new business.

Petition dismissed as to Sarah A. Hall.